**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02075-SBP

C.W.,

     Plaintiff,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security,

     Defendant.

---

## OPINION AND ORDER

---

**Susan Prose, United States Magistrate Judge**

This action is before the court under Title II of the Social Security Act, 42 U.S.C.
§§ 401 *et seq.*, for review of the Commissioner of Social Security's ("Commissioner") final
decision denying Plaintiff C.W.'s[1] claim for disability insurance benefits ("DIB"). The court has
carefully considered the parties' briefs, the social security administrative record, and applicable
law. No hearing is necessary.

Because the Administrative Law Judge ("ALJ") applied the correct legal standards and
substantial evidence supports his findings and the Commissioner's Final Decision, the court
**AFFIRMS** the Final Decision.

## BACKGROUND

Plaintiff applied for DIB on March 4, 2020, claiming she became disabled beginning

---

[1] This Opinion and Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2(b).

August 16, 2017. AR: 11.[2] Plaintiff appeared and testified at an administrative law hearing on

December 13, 2021, before ALJ Terrence Hugar. AR: 40-55 (hearing transcript). Plaintiff was

represented at the hearing by attorney David B. Mueller.

 The ALJ issued his written Decision on January 6, 2022. AR: 11-22. The ALJ determined

Plaintiff was not under a disability from August 16, 2017, through the date last insured.[3] AR: 12.

Plaintiff filed a request for review with the Appeals Council and submitted additional medical

evidence. AR: 1-2. The Appeals Council determined that Plaintiff's reasons for disagreeing with

the ALJ's decision "do not provide a basis for changing the [ALJ's] decision." AR: 1.

Accordingly, the ALJ's decision became the Final Decision of the Commissioner of Social

Security. 20 C.F.R. § 404.984. Plaintiff timely filed this action. This court has jurisdiction to

review the Final Decision under 42 U.S.C. § 405(g).

### DIB FRAMEWORK[4]

 A person is disabled within the meaning of the Social Security Act "only if [her] physical

---

[2] The court uses "ECF No. ---" to refer to specific docket entries in CM/ECF and uses "AR: ---" to refer to documents in the administrative record. The administrative record is found at ECF No. 9.

[3] The ALJ noted that Plaintiff's "date last insured" was September 30, 2020. AR: 11 (finding that Plaintiff's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2020," and therefore "must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits"); *see also* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (claimant's "date last insured was December 31, 2002; thus she had the burden of proving that she was totally disabled on that date or before").

[4] The court here cites relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contains the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations can be found in Part 416 of Title 20, relating to supplemental security income benefits.

and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2)). "However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Brandon v. Colvin*, 129 F. Supp. 3d 1231, 1232 (D. Colo. 2015) (citing *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis in original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Commissioner is required to follow a "five-step sequential evaluation process" which guides the determination of whether an adult claimant meets the definition of disabled under the Social Security Act. 20 C.F.R. § 404.1520(a)(i)-(v) (DIB evaluation of disability of adults). If it can be determined if the claimant is disabled or not at a step, the Commissioner makes the determination and does not continue to the next step. 20 C.F.R. § 404.1520(a)(4). However, if that determination cannot be made, the Commissioner proceeds to the next step. *Id.*

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If so, the claimant is "not disabled regardless of [ ] medical

condition, . . . age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b).

Step two assesses whether the claimant has a medically severe impairment or combination of impairments under 20 C.F.R. § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not show "any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities," the claimant is "not disabled" regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(c).

Step three tests whether the claimant's "impairment(s) meets or equals" a listed impairment and "meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled regardless of "age, education, and work experience." 20 C.F.R. § 404.1520(d). If not, the Commissioner analyzes the claimant's residual functional capacity, or "RFC," which "is the most [the claimant] can still do despite [their] limitations." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).

Step four considers whether the claimant "can still do [their] past relevant work" based on their RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). To be disabled, the claimant's "impairment(s) must prevent [them] from doing [their] past relevant work." 20 C.F.R. § 404.1520(f). For guidance on this determination, "ALJs often seek the views of 'vocational experts.'" *See Biestek v. Berryhill*, 587 U.S. 97, 100 (2019) (citing 20 C.F.R. §§ 404.1566(e), 416.966(e)). If the claimant's "severe impairment" prevents them from doing their "past relevant work" or they have no "past relevant work," the analysis continues to the final step. 20 C.F.R. § 404.1520(g).

Lastly, step five considers the RFC assessment and the claimant's vocational factors—

"age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1). Any

other work the claimant "can adjust to must exist in significant numbers in the national economy

(either in the region where [they] live or in several regions in the country)." 20 C.F.R.

§ 404.1560(c)(1). The Commissioner is "responsible for providing evidence that demonstrates

that other work exists in significant numbers in the national economy that [the claimant] can do,

given [their] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If

the claimant "can make an adjustment to other work," they are "not disabled." 20 C.F.R.

§ 404.1520(g).

     The claimant has the burden of proof at steps one through four. The Commissioner bears

the burden of proof at step five to prove there is other work the plaintiff can perform. *Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The burden-shifting at step five, however, does

not shift the plaintiff's burden to prove her RFC. 20 C.F.R. § 404.1560(c)(2) ("We are not

responsible for providing additional evidence about your residual functional capacity because we

will use the same residual functional capacity assessment that we used to determine if you can do

your past relevant work.").

     Here, the ALJ's Decision shows that he conducted a thorough evaluation at each of the

five steps, as well as of Plaintiff's RFC. At step one, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since her alleged disability onset date of August 16, 2017,

through her date last insured of September 30, 2020. AR: 13. At step two, as relevant here, the

ALJ found that Plaintiff had severe impairments that included migraine headaches and sleep

apnea. *Id.*[5] At step three, the ALJ found that Plaintiff does not have an impairment or

---

[5] At step three, the ALJ stated that Plaintiff's migraines and sleep apnea "are not severe

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[6] AR: 14-16. The ALJ then found that

Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b)[7] except the claimant can occasionally stoop, kneel, and crouch. The claimant cannot crawl or climb ladders, ropes, or scaffolds. The claimant cannot be exposed to hazards, such as unprotected heights and moving mechanical parts. The claimant cannot be exposed to extreme cold and vibration. The claimant cannot tolerate concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. The claimant must be limited to simple, routine, and repetitive tasks. The claimant's work must entail no more than occasional interaction with supervisors, coworkers, and no interaction with the public.

impairments." AR: 14. Read in context, however, this apparent discrepancy appears to be attributable to a scrivener's error. The ALJ's statements that these impairments were "not severe" were made at the conclusion of a paragraph in which the ALJ was discussing whether these impairments met or medically equaled the criteria for a listed impairment in Appendix 1. *See id.* Thus, it is apparent that the ALJ's intention was to refer to Plaintiff's migraines and sleep apnea as not meeting or medically equaling a listing—consistent with his discussion of every other impairment in that section of the Decision. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (recognizing that "a mere scrivener's error" does "not affect the outcome of [a social security] case"). In any event, this discrepancy does not affect the court's conclusion that the Commissioner applied the correct legal standards and that the agency's factual findings are supported by substantial evidence.

[6] The Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, sets forth medical criteria pursuant to which impairments of various bodily systems are considered presumptively disabling. *See* 20 C.F.R. § 404.1520(d); *see also Sullivan v. Zebley*, 493 U.S. 521, 532, 534-35 (1990); *Thomas v. Colvin*, 69 F. Supp. 3d 1174, 1178 (D. Colo. 2014). An impairment is presumptively disabling only if the evidence shows that *all* criteria of the listing are met: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* Social Security Ruling 83-10, 1983 WL 31251, at *6 "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.").

AR: 16.

At step four, the ALJ determined that Plaintiff had no past relevant work. AR: 21.

Finally, at step five, the ALJ found that there are jobs that existed in significant numbers in the

national economy that Plaintiff could have performed, including cleaner, housekeeping, marker,

and router.[8] AR: 21-22. Accordingly, the ALJ determined that Plaintiff was not under a disability

during the relevant period: from her alleged disability onset date of August 16, 2017, through her

date last insured of September 30, 2020. AR: 22.

## STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the court "is limited to determining

whether the Commissioner applied the correct legal standards and whether the agency's factual

findings are supported by substantial evidence." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171,

1175 (10th Cir. 2014). "The phrase 'substantial evidence' is a 'term of art,' used throughout

administrative law to describe how courts are to review agency factfinding." *Biestek*, 587 U.S.

at 102 (quoting *T-Mobile South, LLC v. Roswell*, 574 U.S. 293, 301 (2015)). In applying the

substantial-evidence standard,

> a court looks to an existing administrative record and asks whether it contains
> sufficient evidence to support the agency's factual determinations. And whatever
> the meaning of "substantial" in other contacts, the threshold for such evidentiary
> sufficiency is not high. Substantial evidence, this Court has said, is more than a
> mere scintilla. It means—and means only—such relevant evidence as a reasonable
> mind might accept as adequate to support a conclusion.

---

[8] A "marker" is a person who attaches price tickets to merchandise. Dictionary of Occupational
Titles ("DOT") No. 209.587-034, 1991 WL 671802. A "router" is a person who marks materials
to indicate delivery routes. DOT No. 222.587-038, 1991 WL 672123.

*Id.* at 102-103 (cleaned up); *see also Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) ("Substantial evidence requires more than a scintilla but less than a preponderance.") (quoting *U.S. Cellular Tel., L.L.C., v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200 (quoting *U.S. Cellular*, 340 F.3d at 1133).

The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Knight*, 756 F.3d at 1175 (citation omitted); *see also Zoltanski*, 372 F.3d at 1200 (the court may not displace the Commissioner's choice between two fairly conflicting views, even if the court would have made a different choice if the matter had been before it de novo). Even so, this court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Garland v. Dai*, 593 U.S. 357, 369 (2021) (cleaned up).

In addition, this court's review is guided by the harmless error doctrine, which the Tenth Circuit Court of Appeals applies to social security disability cases. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). A court "may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), [it] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Armijo v. Astrue*,

385 F. App'x 789, 792 (10th Cir. 2010) (quoting *Allen*, 357 F.3d at 1145).

## ANALYSIS

Plaintiff argues that the court should assign two errors to the ALJ: (1) the ALJ failed to properly determine Plaintiff's RFC in that he failed to account for her social limitations and symptoms of migraines and sleep apnea, and (2) his determination at step five that Plaintiff could perform available work in the national economy is not supported by substantial evidence because the hypothetical posed to the vocational expert at the hearing did not include all of the limitations reflected in the RFC. Accordingly, the discussion below focuses on these aspects of the RFC and the step-five determinations and related evidence.

## I.     The RFC Findings

### A.     "Occasional" Interaction with Supervisors and Co-Workers

The ALJ relied on two medical source opinions at issue in this appeal, both of which he found "persuasive." AR: 19. The opinions were provided by state agency psychological consultants Farrell and Word-Allen, both of whom opined that Plaintiff was "not significantly limited" in her ability to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. AR: 126 (Farrell); AR: 148 (Word-Allen). Dr. Farrell and Dr. Word-Allen further opined that Plaintiff "can relate to supervisors and peers on a superficial work basis," but "cannot relate to the general public." AR: 126 (Farrell); AR: 149 (Word-Allen).

Finding these opinions persuasive, and noting that they were supported by, and consistent

with, information in the record—including Plaintiff's own reports about her capabilities and

examination findings confirming that Plaintiff has a normal memory, AR: 19[9]—the ALJ relied

on the opinions of Dr. Farrell and Dr. Word-Allen in determining that Plaintiff had the RFC "to

perform light work as defined in 20 CFR 404.1567(b)," with certain exceptions, but that she

> must be limited to simple, routine, and repetitive tasks. The claimant's work must
> entail no more than occasional interaction with supervisors, coworkers, and no
> interaction with the public.

AR: 16.

Plaintiff argues that the ALJ erred in altering Dr. Farrell's and Dr. Word-Allen's

conclusion that Plaintiff is limited to "superficial" interactions with supervisors and co-workers

to a finding in the RFC that she could have "occasional" such interactions. ECF No. 11 at 5. The

Commissioner disagrees, asserting that the ALJ's findings in the RFC assessment support his

conclusions and that "the ALJ's discussion of the evidence, including Dr. Farrell's and Dr.

Word-Allen[']s conclusions, demonstrates the ALJ reasonably explained how he reached his

conclusion that Plaintiff could perform simple, routine, repetitive tasks and have occasional

supervisor and coworker interaction, and no public interaction." ECF No. 12 at 6-8. The court

agrees with the Commissioner.

To begin with the operative legal framework, "[a] medical opinion is a statement from a

---

[9] *See* 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability (paragraph (c)(1) of this
section) and consistency (paragraph (c)(2) of this section) are the most important factors we
consider when we determine how persuasive we find a medical source's medical opinions or
prior administrative medical findings to be. Therefore, we will explain how we considered the
supportability and consistency factors for a medical source's medical opinions or prior
administrative medical findings in your determination or decision.").

medical source about what [a claimant] can still do despite [their] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions in the . . . ability to perform physical demands . . . [and] mental demands of work activities[.]" 20 C.F.R. § 404.1513(a)(2). Under the regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, "the ALJ considers the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as 'a medical source's familiarity with the other evidence in a claim.'" *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *2 (10th Cir. Dec. 23, 2022) (citing §§ 404.1520c(c), 416.920c(c)).

Evaluating the RFC pursuant to these standards, the court discerns no error on the part of the ALJ. In limiting Plaintiff to "*occasional* interaction with supervisors, coworkers, and no interaction with the public," AR: 16, the RFC is wholly consistent with the opinions of the state agency psychological consultants—both of whom found that Plaintiff was "not significantly limited" in her ability to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. AR: 126 (Farrell); AR: 148 (Word-Allen). That Plaintiff was capable, without significant limitation, to ask questions, request help, follow instructions, respond to criticism, and get along with coworkers obviously encompasses the notion that she could have "occasional" interactions with other people in a working environment. The ALJ did not have to repeat verbatim the opinions of the psychologists in order to

substantially account for them in developing Plaintiff's RFC, as the Tenth Circuit has made clear:

> [T]he ALJ gave great weight to Dr. Smith's opinion, but he did not repeat verbatim Dr. Smith's Section III narrative in his RFC finding or the corresponding hypothetical to the VE. In particular, as Carver observes, **the ALJ did not use the word "superficially" in describing Carver's ability to interact with supervisors**. But in our opinion, the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could "understand, remember, and carry out simple instructions in a work-related setting" and could "interact with co-workers and supervisors, under routine supervision." **Interacting with supervisors in the course of routine supervision over simple work is tantamount to the "superficial" interaction typically encountered in jobs involving such work. To conclude otherwise would parse the ALJ's language too finely**.

*Carver v. Colvin*, 600 F. App'x 616, 619-20 (10th Cir. 2015) (emphasis added, internal citations omitted).

Precisely in the same manner rejected by the Tenth Circuit in *Carver* would Plaintiff have this court deconstruct the ALJ's language, parsing it too finely and in so doing elevating form over substance. The court finds no justification for doing so. The ALJ's use of the Social Security Administration's term "occasional"—which is a term of art used to denote the lowest frequency of activity other than "not present"[10]—adequately incorporates the findings of Dr. Farrell and Dr. Word-Allen. *See, e.g.*, *C.M.M. v. Comm'r, Soc. Sec. Admin.*, No. 22-cv-00908-

---

[10] The Social Security Administration adheres to the following definitions of physical demands: "constantly" is an activity or condition that exists two-thirds or more of the time; "frequently" is an activity or condition that exists one-third to two-thirds of the time; "occasionally" is an activity or condition that exists up to one-third of the time; and "not present" is an activity or condition does not exist. Medical and Vocational Quick Reference Guide, SSA Program Operations Manual System, DI 25001.001, available at SSA - POMS: DI 25001.001 - Medical and Vocational Quick Reference Guide - 07/26/2024 (last visited Sept. 17, 2024).

SKC, 2024 WL 643040, at *4 (D. Colo. Feb. 15, 2024) ("[T]he Court perceives no material difference between [the medical] opinion that Plaintiff 'can relate to supervisors and peers on a *superficial work basis*,' and the RFC's limitations to '*occasional* work interactions with coworkers and supervisors' on a work basis limited to '*simple . . . but not complex* tasks.'") (emphasis in original); *Maurice W. v. Comm'r, Soc. Sec. Admin.*, No. 18-1256-SAC, 2019 WL 1115307, at *6-7 (D. Kan. Mar. 11, 2019) (holding that the RFC for simple, routine, and repetitive tasks was consistent with a limitation to superficial interaction with others); *Ganer v. Berryhill*, No. CIV-16-169 LAM, 2017 WL 3610537, at *6 (D.N.M. Feb. 23, 2017) (finding that an RFC limiting plaintiff to "occasional" interaction with supervisors and co-workers sufficiently incorporated a doctor's conclusion that claimant can interact appropriately with coworkers and supervisors on an "incidental basis").

In addition, by further limiting Plaintiff to "simple, routine, and repetitive tasks," AR: 16, the ALJ adequately accounted for the qualitative term "superficial" used by Dr. Farrell and Dr. Word-Allen. *Carver*, 600 F. App'x at 620 ("Interacting with supervisors in the course of routine supervision over simple work is tantamount to the 'superficial' interaction typically encountered in jobs involving such work."). This court perceives no material difference between the opinion that Plaintiff can "can relate to supervisors and peers on a *superficial work basis*," and the RFC's limitations to "*occasional* interaction with supervisors [and] coworkers." Importantly, too, the ALJ's conclusion regarding Plaintiff's ability to engage in occasional interpersonal contact with supervisors and coworkers was supported not only by the conclusions of Drs. Farrell and Word-Allen, but by other evidence in the record. Foremost among that evidence was Plaintiff's self-report of "engaging in activities that require significant interpersonal contact, such as spending

time with others and shopping in stores." AR: 21; *see also* AR: 19 (discussing these activities as reflecting Plaintiff's ability to engage in "significant socialization"). Coupled with this evidence demonstrating Plaintiff's capacity for socializing with others was evidence that Plaintiff had a normal memory, a normal mood and affect, and "normal behavior, speech, thought processes, associations, thought content, memory, and attention and concentration." AR: 18-21.

Taken as a whole, then, substantial evidence in the record supports the ALJ's conclusion that Plaintiff could have "occasional" interactions with supervisors and work peers, and the ALJ explained the basis for that conclusion in a manner that allows this court to reasonably discern his thought process. *See, e.g.*, *Cobb v. Astrue*, 364 F. App'x 445, 450 (10th Cir. 2010) (affirming that an ALJ's decision may be read "as a whole" when determining whether a statement is without proper explanation); *see also Dai*, 593 U.S. at 369 (reviewing court must uphold an agency's decision when its "path may reasonably be discerned"). The ALJ committed no reversible error with respect to the issue of "occasional" versus "superficial" social interaction.

A different conclusion is not compelled by Plaintiff's claim that two of the three occupations identified by the ALJ—marker and router—would be eliminated had the ALJ confined her to exclusively "superficial" interactions. Plaintiff points to the fact that both of these jobs have a General Educational Development ("GED") reasoning "level 2," which means that a worker must be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See* ECF No. 11 at 6-7; *see also* DOT, Appendix C-Components of the Definition Trailer, 1991 WL 688702 defining GED reasoning level 2). It does not follow, however, that these jobs would require Plaintiff to have more than superficial interactions with her supervisors and coworkers.

As the Tenth Circuit has recognized, an RFC like Plaintiff's limiting a claimant to "occasional interaction with coworkers" and "simple and routine work tasks"—which the Court elsewhere defined as "tantamount to . . . 'superficial' interaction," *Carver*, 600 F. App'x at 620—is "consistent with" level-two reasoning. *Hackett v. Barnhart*, 395 F.3d 1171, 1176 (10th Cir. 2005). Furthermore, the occupations of both marker and router have the lowest DOT rating of "8" ("Taking Instructions-Helping") on a zero-to-eight-point scale for social interactions—which entails "[a]ttending to the work assignment instructions or orders of supervisor. (*No immediate response required* unless clarification of instructions or orders is needed)." *See* DOT App'x B – Explanation of Data, People, and Things, 1991 WL 688701 (emphasis added); *see also* DOT No. 209.587-034, 1991 WL 671802 (marker) & DOT No. 222.587-038, 1991 WL 672123 (router). The DOT descriptions for both marker and router also state that the need for "Taking Instructions-Helping" in these occupations is "Not Significant" and that "Talking" is "Not Present" for either occupation. *See* 1991 WL 671802; 1991 WL 672123. In any event, Plaintiff does not explain how the clearly minimal—if nearly non-existent—social interactions required in the marker and router positions would exceed what reasonably might be termed "superficial" interaction.

Finally, at the hearing, the ALJ asked the vocational expert if an individual with the limitations in Plaintiff's RFC, including "no more than occasional interaction with supervisors and co-workers, and no interaction with public"—could perform "any work." AR: 51-52. The vocational expert responded, "yes," and named three examples in the "light exertional category" that Plaintiff could perform with the given limitations: cleaner/housekeeping, marker, and router. AR: 52. The vocational expert confirmed that her testimony was consistent with the DOT

(except for testimony regarding "off-task tolerance," which is not relevant here), AR: 52-53, and Plaintiff's attorney did not challenge the vocational expert's testimony on the basis of any compromise to Plaintiff's ability to engage in social interactions. AR: 52-54 (questioning the vocational expert regarding standing required for breaks). Plaintiff's counsel raised no objections to the vocational expert's testimony or to her qualifications, *see generally id.*, thus precluding Plaintiff from arguing error in connection with the vocational expert's testimony now. *See Garcia v. Comm'r, SSA*, 817 F. App'x 640, 649 (10th Cir. 2020) ("to the extent Garcia believes the record is inadequate regarding the location and geographical concentration of the occupations the [vocational expert] identified, his counsel could have asked additional questions at the hearing to clarify such issues") (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 n.2 (10th Cir. 1993) ("Counsel could have probed the witness about the source's reliability and acceptance in the profession, but he did not do so, and now our assessment of such matters is effectively foreclosed."); *Wall*, 561 F.3d at 1063 (noting that "the ALJ may reasonably rely on counsel to identify the issue or issues requiring further development," and that the claimant must raise any substantial issue he seeks to develop) (internal quotation marks omitted).

In sum, even if some error might be ascribed to the ALJ for not using the term "superficial" in his RFC findings—and, to be clear, the court discerns no error in the ALJ's semantic choice—"the RFC as a whole sufficiently accounts for the superficial by limiting Plaintiff to occasional contact with co-workers and supervisors and simple, but not complex, tasks." *C.M.M.*, 2024 WL 643040, at *5. This court has reviewed the administrative record and respectfully finds that substantial evidence supports the ALJ's findings regarding limitations on Plaintiff's social interactions and the RFC overall. At bottom, Plaintiff would have this court

override the ALJ's well-supported conclusions, reweigh the evidence before the ALJ, and second-guess his judgment. This the court cannot do. *See, e.g.*, *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency.") (quotation omitted).

### B.      The ALJ's Consideration of Plaintiff's Migraines and Sleep Apnea

Plaintiff next argues that her assessed RFC fails to account for her severe impairments of migraine headaches and sleep apnea that the ALJ found significantly limited Plaintiff's ability to perform basic work activities at step two of his analysis. The record contradicts Plaintiff's assertions concerning these impairments.

As a preliminary matter, the court observes that Plaintiff did *not* contend before the Social Security Administration that she was disabled because of migraines or sleep apnea, but rather—as the ALJ specifically noted in his Decision—that she was disabled "secondary to post-traumatic stress disorder (PTSD), neuropathy in both feet, depression, anxiety, chronic back pain, and bipolar disorder." AR: 17 (citing Exhibit C6A); *id.* at AR: 117, 128 (noting, in initial disability determination of "not disabled" signed by agency adjudicators on September 22, 2020, that "[t]he individual filed for initial claim for disability on 03/04/2020 due to the following illnesses, injuries or conditions: PTSD, neuropathy in both feet, depression, anxiety, chronic back pain, and bipolar disorder"). Notwithstanding the absence of any affirmative assertion by Plaintiff of disability on grounds of either migraines or sleep apnea, it is apparent from the face of the ALJ's Decision that he *did* take into account Plaintiff's migraines and sleep apnea, and symptoms related to those conditions, in assessing her RFC.

First, the ALJ states that "the claimant's postural and environmental limitations are

supported by the combined effects of the claimant's degenerative disc disease, peripheral neuropathy, chronic pain syndrome, *migraine headaches,* obesity, and *obstructive sleep apnea* and the claimant's alleged physical limitations." AR: 20 (emphasis added). Elsewhere in his decision, the ALJ noted Plaintiff's complaints of migraines to her treatment providers and cited medical records summarily noting migraines as a "problem" for Plaintiff beginning October 3, 2017, AR: 17—though none of these treaters ever delineated any limitations or treatment specifically related to Plaintiff's migraines. *See generally* AR: 489-558 (27 references to "Migraine – Onset: 10/3/2017," but no references to treatment for migraines). Indeed, in at least fourteen encounters between Plaintiff and her medical providers, she reported "no migraines, no headaches." *See, e.g.*, AR: 516, 519, 522, 525 (stating under "ROS" [Review of Symptoms] that plaintiff had "no migraines, no headaches"). With regard to Plaintiff's sleep apnea, the ALJ also noted the results of a January 25, 2021 sleep study showing that Plaintiff had "a marked decrease in sleep quality with a very prolonged sleep onset latency and decreased sleep efficiency" and "severe snoring and sleep disordered breathing," though the study ended prematurely at Plaintiff's request with an "absence of stage III or REM sleep." AR: 18; *see also* AR: 610-11 (assessment of sleep study). As with her migraines, Plaintiff repeatedly informed her medical providers on specific visits that she was *not* suffering from sleep apnea at the time, *see, e.g.*, AR: 516, 519, 522, 525, 528, and her medical records further indicate no affirmative treatment for that disease. *See* AR: 570 (noting that sleep study was "positive for sleep apnea but due to claustrophobia unable to tolerate mask," and that Plaintiff questions whether "there is anything else she can do outside of sleep mask").

In addition to this information, in developing the RFC the ALJ considered symptoms that

could be associated with migraine headaches and sleep apnea: staying at home, sleeping, watching television, an increase in pain during cold weather, and difficulties with concentration. AR: 17. The ALJ additionally took into account information that reasonably contradicts a finding of disability on the basis of either impairment: she displayed a normal memory, did not need special reminders to manage her daily activities, and had the ability to cook, perform chores, and drive. *Id.* The ALJ further observed that Plaintiff exhibited "normal behavior, speech, thought processes, associations, thought content, memory, and attention and concentration" during a mental status examination—all behaviors in conflict with a finding of any debilitating effects stemming from sleep apnea or migraines. AR: 18. The record thus shows that the ALJ considered Plaintiff's migraines and sleep apnea and symptoms that may be attributed to those conditions.

The court is not persuaded to find a deficient RFC because the ALJ found persuasive the opinions of Drs. Daniel and Gordon, state agency reviewers who evaluated Plaintiff's physical condition. *See* ECF No. 11 at 15; *see also* AR: 19 (finding "the prior administrative medical findings of State agency medical consultants, Edna Daniel, M.D. and Joel Gordon, M.D. persuasive"). To be sure, both physicians noted that Plaintiff "reports she gets migraines," but made no reference to her sleep apnea. AR: 124, 145. Nevertheless, as the foregoing analysis makes clear, the ALJ did not rely solely on the opinions of these physicians in assessing Plaintiff's RFC. AR: 20 (stating that Plaintiff's RFC was "supported by the opinion evidence, the objective medical evidence, and the claimant's subjective allegations"). Moreover, the ALJ imposed *greater* limitations in the arenas of "postural and environmental limitations"— limitations that he specifically found would account for "the combined effects" of Plaintiff's

impairments, including migraine headaches and obstructive sleep apnea. AR: 20. Notably, the postural and environmental limitations the ALJ chose to impose exceeded those recommended by either Dr. Daniel or Dr. Gordon. *Compare* AR: 16 (finding that Plaintiff "can *occasionally* stoop, kneel, and crouch. The claimant *cannot* crawl or climb ladders, ropes, or scaffolds. The claimant cannot be exposed to hazards, such as unprotected heights and moving mechanical parts. The claimant cannot be exposed to extreme cold and vibration. The claimant cannot tolerate concentrated exposure to fumes, odors, dusts, gases, or poor ventilation.") (emphasis added), *with* AR: 144 (finding that Plaintiff had an "unlimited" capacity to stop, kneel, and crouch, and can "occasionally" climb ladders, ropes, and scaffolds, and that Plaintiff had no environmental limitations) (Gordon), and AR: 124 (finding that Plaintiff had no postural or environmental limitations).

The court therefore finds no deficiencies attendant on the ALJ's assessment of the opinions of Drs. Daniel and Gordon, which the ALJ chose to temper for Plaintiff's benefit. The Tenth Circuit has emphasized that there is "no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably . . . unless the ALJ provides an explanation for extending the claimant such a benefit." *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Rather, "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Id.* Here, in taking into account Plaintiff's migraines and sleep apnea, the ALJ chose to provide limitations above and beyond what the state agency medical reviewers had recommended. Such "temper[ing]" of extremes is permitted. *Id.* Plaintiff points to no evidence suggesting that the ALJ lacked substantial evidentiary support for his

choice or that it amounted to harmful error.

## II.      The ALJ's Step-Five Analysis

As noted above, Plaintiff argues that the ALJ's conclusion at step five—that she could perform available work in the national economy—is not supported by substantial evidence because the hypothetical the ALJ posed to the vocational expert did not include Drs. Farrell's and Word-Allen's conclusion regarding "superficial" supervisor and coworker interaction. *See* ECF No. 11 at 12.[11] The Commissioner argues that the ALJ's RFC assessment accounted for all of Plaintiff's limitations supported by the record and, to the extent it did not account for them, the ALJ's discussion is sufficiently clear for the court to follow his reasons for not including them. ECF No. 12 at 18. The court again agrees with the Commissioner and finds the ALJ's step-five assessment provides no basis for remanding the Final Decision.

At step five, it is the Commissioner's burden to establish that—considering the plaintiff's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the plaintiff can perform. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). However, the only burden on the Commissioner at step five is to prove there is other work the plaintiff can perform; this burden-

---

[11] Specifically, the ALJ asked the vocational expert "to assume an individual with no past jobs. Further assume the individual's limited to work at the light exertion level except the work is with occasional postural except no crawling or climbing of ladders, ropes, or scaffolds, and no exposure to hazards such as unprotected heights and moving mechanical parts; also no concentrated exposure to extreme cold and vibration; also no concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation; must be limited to simple, routine, and repetitive task[s]; and the work must entail no more than occasional interaction with supervisors and co-workers, and no interaction with the public." AR: 51-52.

shifting does not shift the plaintiff's burden to prove their RFC. 20 C.F.R. § 404.1560(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.").

Turning then to Plaintiff's arguments, the court already has found no error in the ALJ's RFC determination. As explained above, the court has concluded that limiting Plaintiff to simple, routine, and repetitive tasks accounts for the qualitative limitation of "superficial" interaction with coworkers and supervisors assessed by the agency psychologists and that the jobs of marker and router are consistent with this limitation. The same reasoning applies with equal force to the job of cleaner, housekeeping, which has an even lower reasoning level (level 1)[12] than the jobs of marker and router (both level 2 reasoning levels). *See* DOT No. 323.687-014, 1991 WL 672783; *see also Carver*, 600 F. App'x at 620 ("Interacting with supervisors in the course of routine supervision *over simple work* is tantamount to the 'superficial' interaction typically encountered in jobs involving such work."). Therefore, the ALJ made no error in not explicitly including a reference to a "superficial" limitation in his question to the vocational expert, which was properly encapsulated within the degree of approved social interactions the ALJ conveyed.

However, even if there is some meaningful substantive difference between "occasional" and "superficial"—which this court does not find—the ALJ was not required to include the supposedly high-level limitation of "superficial" in the hypothetical he posed to the vocational

---

[12] Level 1 reasoning requires that the worker "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT No. 323.687-014, 1991 WL 672783.

expert. *See Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) (rejecting the contention that the ALJ erred in understating the claimant's limitations when posing hypothetical questions to the vocational expert: "The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."); *see also Garcia v. Colvin*, No. 14-cv-02914-NYW, 2016 WL 1028297, at *7 (D. Colo. Mar. 15, 2016) ("Because the court finds no error in the ALJ's RFC determination as it pertains to Dr. Sexton's opinions, the court similarly finds no error in the ALJ's hypothetical question to the vocational expert on the basis of Plaintiff's argument that the hypothetical questions did not account for limitations in Dr. Sexton's opinions.").

Plaintiff's next argument is somewhat more compelling. She asserts that there is a conflict between the ALJ's mental RFC assessment that she have "no public contact" and the requirement of the cleaner, housekeeping occupation that she "render personal assistance to patrons." ECF No. 11 at 13; *see also* DOT No. 323.687-014, 1991 WL 672783.[13] As the Commissioner acknowledges, "this language is potentially problematic." ECF No. 12 at 18. On the other hand, as the Commissioner points out, the position has a DOT people rating of "8" ("Taking Instructions-Helping" are deemed "Not Significant," *see* 1991 WL 672783), and it is also the case that a worker may not be required to interact with the public in every cleaner, housekeeping position. *See id.* (cleaner, housekeeping position could involve "performing any combination of the following duties," including duties that require no public interaction).

---

[13] Once again, Plaintiff's counsel did not question the vocational expert about this supposed discrepancy at the hearing, which this court could find effectively forecloses Plaintiff's argument here. *Garcia*, 817 F. App'x at 649. Nevertheless, the court assesses the merits of her argument.

In any event, the court need not decide whether the position of cleaner, housekeeping conflicts with Plaintiff's mental limitation of no public contact. Assuming without deciding that she is unable to perform that job, there is no dispute that substantial record evidence supports the ALJ's conclusion that she *can* work as a marker or router. And the record before this court confirms that those jobs exist in significant enough numbers in the national economy. Between the two jobs, more than 165,000 jobs are available nationally. AR: 22. While there is there is no bright-line rule as to how many jobs are sufficient to be significant as a matter of law, "the number appears to be somewhere between 100 . . . and 152,000." *Evans v. Colvin,* 640 F. App'x 731, 736-37 (10th Cir. 2016) (concluding "that the Commissioner was substantially justified in arguing that 18,831 remaining jobs in the national economy was sufficient for applying harmless error in this case"); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (no reasonable factfinder could conclude that 152,000 jobs available nationally did not meet the standard for a significant number of jobs in the national economy).

This court is satisfied that the 165,500 nationally-available jobs of marker and router are sufficient to support the ALJ's step-five finding that there were jobs existing in significant numbers that Plaintiff could perform consistent with her assessed RFC. These "significant numbers" satisfy the Commissioner's burden of proof at step five of the sequential evaluation. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b). Therefore, any error by the ALJ in including the job of cleaner, housekeeping as further support for this finding is harmless and does not warrant reversal or remand.

*     *     *

For these reasons, the court finds that the ALJ considered all relevant facts and applied

the correct legal standards, and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Plaintiff was not disabled within the meaning of Title II of the Social Security Act.

**CONCLUSION**

For the foregoing reasons, the court finds that the Commissioner's final decision is supported by substantial evidence in the administrative record and applies the correct legal standards. Consequently, the court finds no grounds warranting reversal or remand. Accordingly, the court **AFFIRMS** the ALJ's determination that Plaintiff is not disabled. The Clerk of Court shall enter judgment in the Commissioner's favor and close this civil action.

DATED: September 17, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge